# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| TIMOTHY MYERS, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:18-CV-104-JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Timothy Myers applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work primarily due to alcohol abuse, seizures, foot pain caused by gout, back pain, sciatica, hypertension, pancreatitis, and depression. An ALJ denied his claim, so Mr. Myers filed this appeal. He argues that the ALJ improperly rejected the opinions of two doctors who believed that he was limited to sedentary work. For the reasons set forth below, the Court affirms the denial of benefits.

## I.    FACTUAL BACKGROUND

Mr. Myers filed applications for Disability Insurance Benefits and Supplemental Security Income, claiming that, by July 2005, he had become unable to work due to his health conditions. He later amended the onset date to June 2015. He primarily alleged that he was disabled due to seizures, back pain, rotator cuff injury, high cholesterol, kidney disease, liver disease, pancreatitis, and gout. (R. 122-23). On August 31, 2017, after reviewing Mr. Myers' medical records and listening to his testimony at the hearing, the ALJ found that he was not disabled. The ALJ determined that Mr. Myers suffers from alcohol abuse, seizures, and gout (20 C.F.R. § 404.1520(c)), which she found to be severe impairments. (R. 40). Mr. Myers also has a variety of

1

impairments that the ALJ found to be non-severe, including hypertension, diabetes mellitus, back pain, sciatica, acute pancreatitis, and pancytopenia. (R. 41). At the hearing, Mr. Myers testified that due to back pain, sciatic pain, and gout pain he is unable to stand or walk for prolonged periods of time and that he is only able to lift up to 20 pounds. (R. 97). After reviewing the record and listening to Mr. Myers at the hearing, the ALJ concluded that he had the RFC to perform work at the medium exertional level and has the residual functional capacity:

> to perform medium work as defined in 20 C.F.R. 404.1567(c) except the claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours in a standard workday. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant cannot be exposed to unprotected heights or moving mechanical machinery.

(R. 43). In making this determination, the ALJ gave greater weight to the state agency medical consultants who found that Mr. Myers could work at the medium exertional level despite two other doctors finding that he was limited to the sedentary exertional level. Determining that Mr. Myers could perform past relevant work and other work in the economy, the ALJ found that Mr. Myers was not disabled. (R. 50). Mr. Myers requested a review by the Appeals Council, which was denied on October 26, 2018, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. See 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to

determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Mr. Myers offers only one argument in support of reversal.[1] He argues that the ALJ improperly rejected the opinions of consultative examiner Dr. Onamusi and medical expert Dr. Fischer (who completed medical interrogatories only) who both found that he was limited to sedentary work.[2] In determining the RFC, the ALJ afforded the state agency medical consultant opinions of Dr. Everetts and Dr. Brill greater weight than the opinions of the examining physician, Dr. Onamusi, and reviewing physician, Dr. Fischer. Mr. Myers claims that the ALJ did not provide a valid explanation for preferring the state medical consultant opinions over the other doctors' opinions and that the ALJ fixated on Mr. Myers' ability to ambulate with a normal gait. Finally, Mr. Myers asserts that his limitation to sedentary work is supported by substantial evidence. [DE 13].

The Court cannot find that the ALJ erred. The record contained two sets of competing medical opinions: two doctors opined that Mr. Myers could perform only sedentary work, while two other doctors opined that he could perform medium work. Resolving those sorts of conflicts is the ALJ's job. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 541 (7th Cir. 1992) ("[R]esolution of evidentiary conflicts lies within the exclusive domain of the ALJ[.]"). Here, the ALJ did not find the sedentary-work opinions persuasive, in large part because they were based on isolated examinations that differed dramatically from the rest of Mr. Myers' treatment records. Dr.

---

[1] As a result of only making one argument in his brief, the plaintiff has waived all other potential issues or errors that might apply as they were not raised for argument before this Court. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

[2] The plaintiff also cites to the examination by Dr. Bacchus, but the Court notes that Dr. Bacchus did not express an opinion regarding Mr. Myers' ability to perform certain levels of work. Dr. Bacchus did observe that Mr. Myers' cane appeared to be medically necessary. (R. 867).

Onamusi's findings were based on information obtained in the individual exam and were not based on Mr. Myers' medical records. (R. 509). The state medical consultants who believed Mr. Myers could perform medium work also noted that discrepancy and found the examinations were not valid reflections of Mr. Myers' condition. The ALJ credited the consultants' opinions and found that Mr. Myers' could perform medium work. The ALJ adequately explained why she found that line of evidence more credible than the other, and her decision was supported by substantial evidence, so the Court must affirm the decision.

Mr. Myers focuses on two doctors who opined that he was limited to sedentary work. In January 2013, Mr. Myers attended a consultative examination with Dr. B.T. Onamusi at the request of the Disability Determination Bureau. At this examination, Mr. Myers discussed his medical history with Dr. Onamusi noting that he had pain in his back, hands, and feet, which he described as being constant moderate-to-severe. (R. 507). Mr. Myers further reported that he "has extreme difficulty weightbearing on the feet." *Id*. In regard to his functional capabilities, Dr. Onamusi noted that Mr. Myers could sit for two hours, stand for thirty minutes, walk a block, and that he could only lift up to twenty pounds. (R. 508). In recounting his examination findings, Dr. Onamusi stated that Mr. Myers "had moderate difficulty weightbearing on both feet due to pain, swelling and inflammation in the feet," and "had mild-to-moderate difficulty transferring onto and off the examination table." *Id*. He also observed that Mr. Myers "had considerable swelling" in one of his foot joints, "with considerable inflammation and tenderness." (R. 509). Dr. Onamusi's diagnoses included "[b]ilateral hand and foot pain probably secondary to severe gouty arthritis," and he opined that Mr. Myers "is currently capable of engaging in sedentary level activities . . . ." *Id*. Notably, on the same day as his physical examination with Dr. Onamusi, Mr. Myers also met with Dr. Kenneth Bundza, Ph.D. for a mental status examination. Dr.

Bundza observed that Mr. Myers was well built, had a healthy overall appearance, and that his gait was unremarkable. (R. 501). Mr. Myers attended another consultative examination with Dr. Bacchus two and a half years later that reflected even more severe limitations—"extremely antalgic" gait and an inability to walk without a cane due to "severe left foot pain and weakness"—but he did not opine on any of Mr. Myers' functional limitations. (R. 866).

In 2017, an impartial medical expert, Dr. Fischer, examined Mr. Myers' medical records and responded to medical interrogatories about his condition. Dr. Fischer indicated that Mr. Myers would never be able to lift or carry more than ten pounds. (R. 1055). Dr. Fischer stated that Mr. Myers could "ambulate with an antalgic gait" and that he used "a cane at the [consultative exam] in 2015 but a cane was not documented in other records." (R. 1054). Dr. Fischer also indicated that Mr. Myers could never stand or walk for longer than two hours in an eight-hour work day. (R. 1056). Finally, while Dr. Fischer stated that Mr. Myers' alleged impairments would improve absent alcoholism, he also stated that the "medical evidence supports claimant's functional capabilities to work at the sedentary physical exertional level . . . ." (R. 1054).

In contrast to the two opinions from Dr. Onamusi and Dr. Fischer, the state agency medical consultants opined that Mr. Myers was able to work at the medium exertional level with additional postural and environmental limitations. The first report, by Dr. David Everetts, acknowledged that Mr. Myers had pain and swelling in his feet at the first consultative examination, which appeared to reflect an acute gouty arthritis attack. (R. 118). Dr. Everetts noted, though, that "[m]ultiple medical encounters in past 3 years do not note [complaints of] foot pain or acute gout attack," but instead reflected normal musculoskeletal findings. *Id*. Dr. Everetts also noted the findings during the second examination in 2016 but explained that he did

not find evidence that Mr. Myers had "musculoskeletal limits other than during acute gout attacks," of which the record only reflected two. He noted that in between those two examinations, Mr. Myers' musculoskeletal findings were "completely normal." *Id*. He thus opined that those examinations were not valid indications of Mr. Myers' symptoms, but reflected "either an element of magnification for the disability exam and/or the exam was done in the middle of an acute gouty attack which by the longitudinal [evidence] is a relatively infrequent occurrence." *Id*. Based on his assessment of the record, Dr. Everett concluded that Mr. Myers could perform medium work. Several months later, another reviewing physician, Dr. M. Brill, reiterated those conclusions and further noted that the most recent examinations in December of 2015 also reflected normal balance, gait, and coordination. (R. 130). Dr. Brill likewise opined that Mr. Myers could perform medium work. Thus, the ALJ was faced with conflicting opinions in the record related to Mr. Myers' capabilities.

The ALJ explained at length how she resolved that conflicting evidence, and those explanations justify her findings and are supported by substantial evidence. She first addressed the two consultative examinations by Dr. Onamusi and Dr. Bacchus, stating that she "finds it difficult to rely on these examinations." (R. 45). Mr. Myers had stated in the second examination that he could not walk without a cane, but the ALJ noted that outside of that one examination, "there is no indication that [Mr. Myers] needs a cane or other assistive device in his medical records." *Id.* And whereas both examinations indicated that Mr. Myers walked with an antalgic or extremely antalgic gait, the ALJ noted that "the overwhelming majority of the record indicates that [Mr. Myers] ambulates with a normal gait." *Id*. That statement accurately characterizes the record. The ALJ also noted that Mr. Myers' physical therapist described his gait as having only "minor abnormalities," such as a slight hip external rotation, but was "otherwise within

8

functional limits." *Id.* And while Mr. Myers had once reported walking on the outside of his feet due to gout, the ALJ explained that the record does not otherwise reflect the sorts of problems indicated during the consultative examinations. The ALJ further noted that the "vast majority of the record indicates that the claimant also appears to be in only mild distress or does not appear to be in acute distress." *Id.* The decision cited almost two dozen specific records in support of that statement, and those records routinely reflect that Mr. Myers had no swelling in his extremities, that he walked with a normal gait, and that he had no musculoskeletal complaints. The ALJ's decision to discount the findings of the consultative examinations was thus supported by substantial evidence.

The ALJ also explained at length why she afforded the opinions of Dr. Onamusi and Dr. Fischer lower weight. First, in addressing Dr. Fischer's opinion, the ALJ stated:

> The undersigned notes that Dr. Fischer described the claimant as ambulating with an antalgic gait. That is true if one looks at the reports of his consultative examiners. However, as has been discussed above, the claimant's actual medical records overwhelming indicate that the claimant ambulates with a normal gait (Exhibits 23F/81, 22F/5; 20F/3, 4; 11 F/3, 5; 8F/19, 80, 96; 10F/24). Based on these records, the undersigned affords greater weight to the opinion of the State agency consultants.

(R. 47). Then when addressing Dr. Onamusi's opinion, the ALJ explained why she afforded it little weight:

> Furthermore, as has been discussed above, the claimant's presentation during his consultative e[xami]nations is notably different from his personation in his medical records. When he is examined by Dr. Onamusi, he was unable to kneel or squat and had moderate difficulty weight bearing (Exhibit 7F/3). Based on this Dr. Onamusi quite reasonably limited the claimant to the sedentary level of exertion. However, the claimant's medical records describe the claimant as having normal gait (Exhibits 23F/81, 22F/5; 20F/3, 4; 11 F/3, 5; 8F/19, 80, 96; 10F/24). The record does not suggest that the claimant has difficulty with basic weight bearing. . . . The undersigned finds it difficult to accept the examinations that are so notably different f[ro]m the rest of the record . . . .

(R. 47). The Court also notes that observations from Mr. Myers' examination with Dr. Bundza

on the very same day indicated that his gait was unremarkable. (R. 501). Regarding both opinions by Dr. Onamusi and Dr. Fischer, the ALJ properly explained why she was affording the doctor's opinions lower weight and pointed to specific records which supported a contrary finding. In short, she found that the two examinations did not accurately reflect Mr. Myers' conditions, and because Dr. Onamusi and Dr. Fischer relied on those examinations, she discounted their opinions accordingly. As noted earlier, Dr. Onamusi only based his determination of a sedentary exertional level on information obtained during the exam and not on any of Mr. Myers other medical history. And Dr. Fischer referenced the consultative exam with Dr. Bacchus where Mr. Myers required a cane when he determined that Mr. Myers ambulated with an antalgic gait, which supported a finding of limiting him to sedentary work.

The ALJ further explained why, after having discounted those opinions, she concluded that Mr. Myers could perform medium work. She noted that while the medical record does "indicate the client has foot problems," it is "not to such extent that they have prevented him from walking with a normal gait . . . ." (R. 46). The ALJ found there to be substantial evidence in the record demonstrating that Mr. Myers did not require a cane or have an antalgic gait, but instead ambulated normally. Thus, the ALJ gave great weight to Dr. Everetts' and Dr. Brill's opinions and found that Mr. Myers could perform medium work.

While Mr. Myers may wish that the ALJ had weighed this evidence differently and imposed greater limitations, the ALJ did not ignore it and Mr. Myers has not developed any argument as to how the ALJ erred in considering this evidence. *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) (affirming the ALJ's decision since the "ALJ specifically addressed all the evidence that [the plaintiff] points out, though he did not assign the significance to it that [the plaintiff] prefers"). The record demonstrated that Mr. Myers has been diagnosed with gout in his

feet and struggles with back pain, but also contained conflicting evidence as to whether or to what extent Mr. Myers suffered symptoms from those conditions on a regular basis. After setting out her RFC determination, the ALJ provided a lengthy discussion of Mr. Myers' impairments and information found in his medical records. The ALJ also adequately explained how she weighed the different opinions of the examining doctor, the consulting doctor, and the state agency medical consultants. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (quotation omitted).

The few specific criticisms Mr. Myers offers in response are unfounded. He argues that the ALJ should have deferred to the examining physician over the reviewing physicians, and that the ALJ did not provide a valid explanation for accepting the reviewing physicians' opinions instead. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). But the ALJ did offer a good reason for declining to adopt Dr. Onamusi's opinion: that Dr. Onamusi's examination was "so notably different f[ro]m the rest of the record," which reflected normal gait and no difficulty with basic weight bearing, and only mild or no distress. (R. 47). As already discussed, substantial evidence supports that conclusion.

Mr. Myers also argues that the ALJ erroneously equated normal gait with an ability to perform medium work, even though that work requires significant standing and walking. The ALJ did not commit that error, though. Rather, the ALJ was evaluating the examination findings, which included that Mr. Myers had moderate difficulty weightbearing on both feet (R. 509) and an "extremely antalgic" gait (R. 866). Dr. Onamusi and Dr. Fischer relied on those findings in

opining that Mr. Myers could only perform sedentary work. The ALJ thus appropriately cited the evidence contrary to those findings—that Mr. Myers had normal gait and no difficulty with weight bearing as noted in several other medical records—as a reason for discounting those opinions. And while the ALJ relied in part on Mr. Myers' normal gait in finding that he could perform medium work, she also relied on other evidence in the record that generally showed a lack of musculoskeletal limitations, along with the opinions of two reviewing physicians, all of which adequately supports the ALJ's findings.

Mr. Myers finally argues that the ALJ should have accepted Dr. Fischer's opinions because Dr. Fischer was able to review the entire record, and that the ALJ played doctor in discounting those opinions. However, both the state consultant physicians also reviewed the entire record, just like Dr. Fischer, and the ALJ adequately explained why she found Dr. Everetts' and Dr. Brills' opinions more persuasive. The ALJ did not play doctor, either, but expressly relied on those reviewing physicians' opinions. Therefore, the ALJ has appropriately weighed and explained her reasoning for affording some opinions more weight than others and has supported that reasoning and the ultimate RFC determination with substantial evidence.

## IV.  CONCLUSION

For those reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and that Mr. Myers has not presented any grounds for reversal. Accordingly, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: February 26, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court